# United States Court of Appeals for the Federal Circuit

---

**ARCHROMA U.S., INC.,**
*Plaintiff-Appellee*

**v.**

**DEPARTMENT OF COMMERCE, TEH FONG MIN (TFM) INTERNATIONAL CO, LTD.,**
*Defendants-Appellants*

**INTERNATIONAL TRADE COMMISSION,**
*Defendant*

---

2024-2159, 2024-2162

---

Appeals from the United States Court of International Trade in No. 1:22-cv-00354-MMB, Judge M. Miller Baker.

---

Decided:  August 7, 2026

---

TATIANA SAINATI, Wiley Rein, LLP, Washington, DC, argued for plaintiff-appellee.  Also represented by TIMOTHY C. BRIGHTBILL, PAUL A. DEVAMITHRAN, DERICK HOLT, MAUREEN E. THORSON.

GEOFFREY M. LONG, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellant.  Also represented by TARA K. HOGAN, PATRICIA M. MCCARTHY, BRETT

SHUMATE, FRANKLIN E. WHITE, JR.; AYAT MUJAIS, FEE PAUWELS, Office of the Chief Counsel for Trade Enforcement and Compliance, United States Department of Commerce, Washington, DC.

PETER JOHN KOENIG, SBA Trade Law, Washington, DC, for defendant-appellant. Also represented by JEREMY WILLIAM DUTRA, Squire Patton Boggs (US) LLP, Washington, DC

———————————

Before MOORE, *Chief Judge*, CUNNINGHAM and STARK, *Circuit Judges*.

STARK, *Circuit Judge*.

This case, which is before us on review from the Court of International Trade ("Trade Court"), asks us to decide whether a filing deadline imposed by a regulation issued by the Department of Commerce ("Commerce") conflicts with the statute governing "sunset reviews" of antidumping duty orders. The Trade Court found such a conflict and, thus, declared Commerce's regulation void, enjoining its enforcement.

We see the situation differently. The applicable statute is silent as to when a domestic interested party must indicate an intent to participate in a sunset review, and Commerce's regulatory requirement that such parties do so within 15 days after Commerce issues notice of initiating a review was the product of reasoned decisionmaking within the bounds of the agency's delegated power. Therefore, the regulation is a permissible exercise of the agency's authority. We reverse the contrary judgment of the Trade Court.

I

A

The Tariff Act of 1930 ("Tariff Act"), as amended by the Uruguay Round Agreements Act ("URAA"),[1] requires Commerce to review antidumping duty orders every five years to determine whether revocation of such an order would be likely to lead to the continuation or recurrence of dumping. *See* 19 U.S.C. § 1675(c)(1).  The statute further commands that these "sunset reviews" begin with the agency publishing "a notice of initiation of a review" in the Federal Register.    *Id.*   § 1675(c)(2);   *see   also   generally*  SAA, 1994 U.S.C.C.A.N. at 4205 (explaining that § 1675(c) "establish[es] the procedural and basic substantive rules to be applied by Commerce and the [International Trade Commission ("Commission")] in conducting five-year reviews (i.e., sunset reviews)").  The statute adds that the notice of initiation must request that "interested parties submit" information, including "a statement expressing their willingness to participate in the review."  19 U.S.C. § 1675(c)(2).  "Interested party" is defined in § 1677(9) and includes,

---

[1] The URAA gave effect to several agreements arising from the Uruguay Round of international trade negotiations. *See Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 66 F.4th 968, 977 (Fed. Cir. 2023) (hereinafter "*COALITION*").  The URAA is interpreted according to the Statement of Administrative Action ("SAA"), H.R. Doc. No. 103-316 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, which "shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the [URAA] in any judicial proceeding in which a question arises concerning such interpretation or application."  19 U.S.C. § 3512(d); *see also Mid Continent Steel & Wire, Inc. v. United States*, 941 F.3d 530, 539 (Fed. Cir. 2019).

among others, "a foreign manufacturer, producer, or exporter, or the United States importer, of subject merchandise" as well as "a manufacturer, producer, or wholesaler in the United States of a domestic like product," the latter of whom are referred to as "domestic interested parties." *Id.* § 1677(9)(A), (C); *see also* 19 C.F.R. § 351.102(b)(17) ("'Domestic interested party' means an interested party described in subparagraph (C) . . . of section 771(9) of the [Tariff Act].").

While the Tariff Act imposes no express deadline for interested parties to submit the information requested by Commerce, it provides that "[i]f no interested party responds to the notice of initiation . . . , [Commerce] shall issue a final determination, *within 90 days after the initiation of a review*, revoking the [antidumping duty] order . . . to which such notice relates." 19 U.S.C. § 1675(c)(3)(A) (emphasis added).[2] This provision, according to the SAA, is intended to "eliminate needless reviews," as it is expected that any entity failing to respond within 90 days to a notice of initiation also "would not provide adequate information if the agencies conducted a full-fledged review." SAA, 1994 U.S.C.C.A.N. at 4206.

Because the Tariff Act mandates that Commerce terminate a sunset review, and revoke an antidumping order, if no interested party responds within 90 days to the notice of initiation, it is necessary that Commerce determine, at some point in advance of the 90-day mark, whether any interested parties intend to participate. The statutory 90-

---

[2] If, alternatively, at least one interested party submits an adequate and timely response, Commerce must conduct a full sunset review and (subject to certain exceptions) "shall make its final determination . . . within 240 days after the date on which a review is initiated." 19 U.S.C. § 1675(c)(5)(A).

day command also means, as a logical consequence, that in effect the deadline for interested parties to submit the information Commerce needs to conduct its sunset review is no later than 90 days after the notice of initiation of such review.

The Tariff Act authorizes "appropriate officers of the United States Government" to "issue such regulations, as may be necessary to ensure that any provision of [the URAA] . . . is appropriately implemented." 19 U.S.C. § 3513(a)(2); *see also generally COALITION*, 66 F.4th at 974-75 (explaining that Commerce typically proceeds through notice-and-comment rulemaking). Pursuant to this authority, Commerce undertook a notice-and-comment rulemaking process and adopted two regulatory deadlines. The first, which is at issue in this appeal, is a requirement that *domestic* interested parties submit a "notice of intent to participate" within 15 days after Commerce issues the notice of initiation of review ("15-day requirement"). 19 C.F.R. §351.218(d)(1)(i) ("Section 315.218(d)(1)(i)"). The second deadline requires that *all* interested parties submit their "substantive response[s]" within 30 days after issuance of the notice of initiation of review ("30-day requirement"). *Id*. § 351.218(d)(3)(i).

Commerce justified its adoption of the 15-day requirement as furthering the goals of eliminating needless reviews and promoting administrative efficiency. *See* 63 Fed. Reg. at 13,517 ("The requirement that domestic interested parties notify [Commerce] of their intention to participate prior to the deadline for submission of substantive responses . . . is intended to alleviate the burden on parties of having to prepare substantive responses in cases where there is no domestic party interest."). It emphasized the minimal burden of complying, given that a domestic interested party is required to submit only basic, readily-available information (as we describe more fully below). *See id*.

at 13,517-18 ("It is [Commerce's] intention to make the Notice of Intent procedure as simple as possible and, as a result, the information required to be provided is minimal."). The regulation also allows for a domestic interested party to request an extension of the 15-day deadline if it can show, prior to the deadline, "good cause," and additionally allows Commerce to accept untimely filings upon a showing of an "extraordinary circumstance." 19 C.F.R. § 351.302(b), (c).

In the same regulation imposing the 15-day and 30-day requirements, Commerce delineated the information that needs to be provided in each responsive filing. For the 15-day notice of intent to participate, a domestic interested party must provide:

> (A) "The name, address, and phone number of the domestic interested party (and its members, if applicable) that intends to participate in the sunset review and the statutory basis . . . for interested party status;"
>
> (B) A statement indicating if the domestic producer is related to a foreign producer or foreign exporter or is an importer of the subject merchandise, or is related to such an importer;
>
> (C) "The name, address, and phone number of legal counsel or other representative, if any;"
>
> (D) Identification of "[t]he subject merchandise and country subject to the sunset review;" and

(E) "The citation and date of publication in the Federal Register of the notice of initiation."

*Id.* § 351.218(d)(1)(ii)(A)-(E).

For the 30-day substantive response, an interested party must provide all of the same information required in the 15-day filing (except (B) above, which relates to domestic producers) as well as:

A statement expressing the interested party's willingness to participate in the review by providing information requested by the Department, which must include a summary of that party's historical participation in any segment of the proceeding before the Department related to the subject merchandise;

A statement regarding the likely effects of revocation of the order or termination of the suspended investigation under review, which must include any factual information, argument, and reason to support such statement;

Factual information, argument, and reason concerning the dumping margin or countervailing duty rate, as applicable, that is likely to prevail if the Secretary revokes the order or terminates the suspended investigation, that the Department should select for a particular interested party(s);

> A summary of the Department's findings regarding duty absorption, if any, including a citation to the Federal Register notice in which the Department's findings are set forth; and

> A description of any relevant scope clarification or ruling, including a circumvention determination, or changed circumstances determination issued by the Department during the proceeding with respect to the subject merchandise.

*Id.* § 351.218(d)(3)(ii)(E)-(I) (internal lettering omitted).

The regulation expressly warns domestic interested parties that they will not be permitted to participate in a sunset review if they do not satisfy the 15-day requirement. It states: "A domestic interested party that does not file a notice of [i]ntent to participate in the sunset review will be considered not willing to participate in the review and the Secretary will not accept or consider any unsolicited submissions from that party during the course of the review." *Id.* § 351.218(d)(1)(iii)(A).

B

In 2012, Commerce issued antidumping duty orders on paper whitening chemicals (i.e., stilbenic optical brightening agents or "SBAs") from the People's Republic of China and Taiwan. Following a sunset review in 2017, Commerce extended the antidumping duties through 2022.

Commerce published a notice of initiation of a second set of sunset reviews on October 3, 2022.[3] Consistent with

---

[3] Commerce issued its notice three days later than its own regulation required. *See* 19 C.F.R. § 351.218(c)(2).

Section 315.218(d)(1)(i), the notice of initiation advised that notices of intent to participate were due from domestic interested parties within 15 days, on October 18, and substantive responses from all interested parties were due within 30 days, on November 2.

Archroma U.S., Inc. ("Archroma"), a domestic importer of SBAs and therefore a "domestic interested party," filed a notice of intent to participate on October 24, which was six days too late to comply with the 15-day requirement. Subsequently, on October 31, Archroma filed its substantive response, which was in advance of the deadline for meeting the 30-day requirement. However, because Archroma failed to meet the 15-day deadline, Commerce did not accept Archroma's October 31 substantive filing. Instead, Commerce explained to Archroma that its filings were untimely and would be removed from the record. Thereafter, Archroma asked Commerce to accept its late notice of intent filing, but it neither explained nor justified its lateness nor attempted to demonstrate "extraordinary circumstances" for missing the deadline. Thus, Commerce rejected Archroma's notice of intent to participate and reiterated that, as a result, it would not accept substantive responses from Archroma. Commerce subsequently rejected Archroma's requests for reconsideration.

Because no other domestic interested party responded to the notice of initiation by the October 18 regulatory deadline, on December 29, 2022, Commerce terminated the sunset review and revoked the antidumping duty orders, meeting the statutory command to do so within 90 days of having issued its notice of initiation of review.

---

No party asserts that Commerce's tardiness is of any legal significance to the issues on appeal.

10                              ARCHROMA U.S., INC. v. COMMERCE

Archroma then filed this lawsuit in the Trade Court
against Commerce and the Commission.[4]  Teh Fong Min
International Co., Ltd. ("TFM"), a Taiwanese producer-im-
porter, intervened in support of the agencies.  Archroma
eventually moved for judgment on the agency record, which
the    Trade    Court    granted,    holding    that    Sec-
tion 315.218(d)(1)(i)'s 15-day requirement for domestic in-
terested parties to file a notice of intent to participate
"contradicts" 19 U.S.C. § 1675(c).  J.A. 3.  The trial court
acknowledged that § 1675(c) is silent regarding what con-
stitutes "[n]o response" from domestic interested parties,
triggering the statutory requirement to terminate the re-
view and revoke the antidumping duty order within
90 days.  J.A. 6, 14.  It concluded, nonetheless, that reading
all of § 1675(c) as a whole and in context, "it's obvious that
'no . . . respon[se]' to the notice of initiation under this sub-
section in § 1675(c)(3)(A) means no answer to a solicitation
for the *substantive content* that § 1675(c)(2)(A)-(C) in-
structs the agency to seek."  J.A. 16 (alterations in original;
emphasis added).  Thus, because Archroma provided Com-
merce with the substantive content in time to meet the 30-

---

[4] The Tariff Act requires both Commerce and the Com-
mission to play a role in sunset reviews.  *See* 19 U.S.C.
§ 1675(c)(1) ("[T]he administering authority [i.e., Com-
merce] and the Commission shall conduct a review to de-
termine . . . whether revocation of the countervailing or
antidumping duty order . . . would be likely to lead to con-
tinuation or recurrence of dumping or a countervailable
subsidy (as the case may be) and of material injury.").
Commerce assesses whether dumping is likely to continue
or recur if the order is revoked; the Commission determines
whether material injury would be likely to continue or re-
cur upon revocation.  *Id*. § 1675(d)(2).  This appeal involves
only the requirements for a domestic interested party's
participation in Commerce's portion of a sunset review.

day requirement, Commerce had no discretion to reject its submission simply because Archroma had previously failed to satisfy the 15-day requirement for making its intent to participate in the sunset reviews known. Hence, the Trade Court entered a declaratory judgment for Archroma and a corresponding injunction, reinstating the antidumping orders on SBAs and requiring Commerce to conduct full sunset reviews, with Archroma's participation.

Commerce and TFM timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## II

We review the Trade Court's grant of judgment on the administrative record de novo. *See Nucor Corp. v. United States*, 927 F.3d 1243, 1248 (Fed. Cir. 2019). Here, then, "[w]e review Commerce's decision using the same standard of review applied by the Court of International Trade." *Id.* In doing so, we "hold unlawful any determination, finding, or conclusion found . . . to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(ii).

Whether a statute conflicts with – and, hence, invalidates – an agency regulation is a question of law we also decide de novo. *See Lesko v. United States*, 161 F.4th 1352, 1358 (Fed. Cir. 2025) (en banc) ("Statutory interpretation is a question of law we review de novo."); *see also Gujarat Fluorochemicals Ltd. v. United States*, 153 F.4th 1376, 1381 (Fed. Cir. 2025) ("Questions of regulatory interpretation we review de novo.").

## III

Our analysis of the parties' dispute proceeds in three parts. First, we assess whether Section 315.218(d)(1)(i)'s 15-day requirement is within Commerce's delegated power to regulate under the Tariff Act and whether it conflicts with § 1675(c). Because we find the regulation to be within the bounds of Commerce's regulatory authority and not to

be in conflict with § 1675(c), we next address whether the rule reflects reasoned agency decisionmaking, and conclude that it does. Lastly, we address, and reject, Archroma's arguments for a contrary conclusion.

### A

In evaluating whether to set aside a regulation based on a purported conflict with a statute, we must first assess whether the regulation is a "valid exercise of [the agency's] congressionally delegated rulemaking authority." *Lesko*, 161 F.4th at 1355, 1358. To do so, we exercise our "independent judgment" to determine whether Congress delegated rulemaking authority to the agency. *Id.* at 1358. Congress delegates regulatory authority in statutes that (1) "expressly delegate to an agency the authority to define statutory terms," (2) "empower an agency to prescribe rules to 'fill up the details' of a statutory scheme," or (3) "provide agencies with 'flexibility' to regulate." *Id.* (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394-95 (2024)).

The Tariff Act authorizes Commerce to "fill up the details" of § 1675(c)'s statutory requirement that a sunset review (and associated duty order) be terminated in the absence of any interested party response within 90 days. This necessarily includes the details of when, and how, a domestic interested party is required to indicate its intent to participate in the sunset review. Section 315.218(d)(1)(i)'s 15-day requirement for domestic interested parties to submit a notice of intent to participate is within the bounds of Commerce's delegated authority.

Our conclusion that the Tariff Act provides Commerce "fill up the details" authority is based on the statutory provision authorizing "appropriate officers of the United States Government" to "issue such regulations[] *as may be necessary* to ensure that any provision of [the Tariff] Act . . . is appropriately implemented." 19 U.S.C. § 3513(a)(2) (emphasis added). We have previously interpreted

§ 3513(a)(2) as a broad "grant of regulatory-implementation power to Commerce." *COALITION*, 66 F.4th at 977; *see also id.* at 971 ("We hold . . . that [Commerce] had statutory authority to adopt [an] expedited-review process as procedures for implementing statutory provisions that authorize individualized determinations in [countervailing duty] proceedings."); *Lesko*, 161 F.4th at 1360 (holding that statute authorizing adoption of regulations that are "necessary" delegates agency the authority to fill up the details). We have also previously approved Commerce's adoption of a 30-day regulatory deadline for a party to request a hearing, where the applicable portion of the Tariff Act, 19 U.S.C. § 1677c(a)(1), required Commerce to hold hearings at the request of any party but was silent regarding the deadline for parties to make such a request. *See M S Int'l, Inc. v. United States*, 32 F.4th 1145, 1152-53 (Fed. Cir. 2022) ("Commerce may set such deadlines where the statute is silent, and must be permitted to enforce them in order to administer the trade remedy laws.") (internal citation omitted).

It was within Commerce's broad delegated authority to determine that the 15-day requirement is "*necessary to ensure*" that Commerce can meet its statutory obligations under the Tariff Act. In particular, to enable Commerce to be ready to terminate a sunset review and revoke an antidumping duty order "within 90 days" after noticing the initiation of a sunset review – actions Commerce is *required by statute to take* in the event that "no interested party responds to the notice of initiation" – it is necessary that Commerce know, sufficiently in advance of the 90-day deadline, whether any interested party is going to respond to the notice. 19 U.S.C. § 1675(c)(3). Setting a 15-day requirement for domestic interested parties to make known whether they will participate and support extension of an antidumping duty order, and giving another 15 days to other interested parties (who may prefer termination of the order, which will happen even without their participation

14                                    ARCHROMA U.S., INC. v. COMMERCE

*if* no domestic interested party meets the 15-day requirement), ensures Commerce can appropriately implement the statute.

Further support for our conclusion that Congress delegated Commerce authority to establish the 15-day requirement is found in § 1675(c)(2)(A)'s directive that Commerce solicit "a statement expressing [an interested party's] willingness to participate in the review by providing information requested by" Commerce. Since Commerce is given explicit authority to require a statement of intent to participate, and further explicit authority to determine the information to request, it follows that Commerce likewise has authority to "fill in" the detail of a reasonable deadline for submission of these materials.

In short, the combination of broad "as may be necessary" language in 19 U.S.C. § 3513(a)(2), along with silence in 19 U.S.C. § 1675(c) as to interim (i.e., pre-90-day) deadlines, demonstrates that Congress intended Commerce to "fill up the details" of the response requirement. *See Lesko*, 161 F.4th at 1360 ("Congress's silence on this issue, in combination with its delegation of authority to OPM to prescribe regulations necessary for administering the overtime statute, clears the path for OPM to fill up the details of the authorization process."). Therefore, Commerce's 15-day requirement fits within the bounds of the agency's delegated power.

B

Archroma does not contend that Section 315.218(d)(1)(i)'s 15-day requirement is unconstitutional. Thus, we proceed to assess whether Commerce's adoption of this regulation reflects "'reasoned decisionmaking' within the boundaries of its delegated authority." *Lesko*, 161 F.4th at 1358. It does.

As Commerce explained during its rulemaking process, the 15-day requirement is designed "to alleviate the burden

on parties having to prepare substantive responses in cases where there is no domestic party interest," furthering the goals of "eliminat[ing] needless reviews and promot[ing] administrative efficiency," consistent with the statutory mandate of the Tariff Act. 63 Fed. Reg. at 13,517; *see also* SAA, 1994 U.S.C.C.A.N. at 4206. Without a reasonable deadline for domestic interested parties to make their intent to participate known, entities subject to the relevant duty order might waste time preparing (and even submitting) substantive responses – which are due 30 days after the notice of initiation is published in the Federal Register – that would be entirely unnecessary if no domestic interested party intends to participate in the sunset review. Without a reasonable deadline for domestic interested parties, Commerce, too, might waste its resources, conducting the early stages of a sunset review, preparing for later stages, and possibly even reviewing substantive responses from entities subject to the duty order – even if, unbeknownst to the agency, no domestic interested party intends to participate.

As the Trade Court noted (and Archroma does not contest), the burdens imposed by the 15-day requirement of Section 315.218(d)(1)(i) are minimal and do not prejudice any party. Moreover, the 15-day deadline is not absolute: a domestic interested party can obtain an extension by showing "good cause" before the deadline, and can have an untimely filing accepted upon a showing of "extraordinary circumstances." 19 C.F.R. § 351.302(b), (c). Given Commerce's demonstrated need to know whether, as required by the statute, it will be terminating the sunset review and revoking the antidumping duty order "within 90 days" – along with the minimal burdens imposed on domestic interested parties and the opportunities for relief from the 15-day requirement – we conclude that Commerce's adoption of Section 315.218(d)(1)(i)'s 15-day requirement is the product of reasoned decisionmaking.

C

Archroma, echoing the Trade Court, makes several arguments in favor of a contrary conclusion. Although none persuade us, several merit further discussion.

Archroma contends that our reading of the statute is inconsistent with the "whole-text-canon," which "'calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts.'" *Transpacific Steel LLC v. United States*, 4 F.4th 1306, 1322 (Fed. Cir. 2022) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 24, at 167 (2012)). Applying this interpretive principle, the Trade Court emphasized it was "undisputed that Archroma timely responded to Commerce's request for substantive material," in compliance with the 30-day requirement, and from this reasoned that "[t]he statute therefore obligated [Commerce] to undertake reviews and allow [Archroma] to participate in the ensuing proceedings" regardless of whether Archroma also complied with the 15-day requirement. J.A. 16.

While we agree that, as a general matter, the best reading of a statute is one that provides a full and fair meaning to each part of the statute, we have done so here. Neither the Trade Court nor Archroma have identified any provision of the Tariff Act that Commerce's 15-day requirement reads out. Nowhere does the Tariff Act give an interested party, including a domestic interested party, an unqualified right to participate in sunset reviews.

Archroma's position is further undermined by its acceptance of the 30-day requirement as an acceptable exercise of Commerce's regulatory authority. *See* Oral Arg. at 13:51-16:48 (discussing substantive response deadline in 19 C.F.R. § 351.218(d)(3)(i)); *see also* Resp. Br. at 22-23. Archroma further concedes that Commerce has authority to require full substantive responses within 15 days of the notice of initiation of a sunset review. *See* Oral Arg. at

13:51-16:48. We do not see how to square these concessions with Archroma's insistence that the 15-day regulatory requirement for indicating an intent to participate is somehow beyond Commerce's authority, or in conflict with the statute.

Finally, Archroma suggests that our reversal of the Trade Court implies that Commerce enjoys "inherent authority to issue whatever procedural rule it sees fit." Resp. Br. at 16. That is simply not the case: Commerce may only regulate where Congress has delegated to it the power to do so. Commerce must also act lawfully and reasonably in adopting regulations. Our decision today is limited to Commerce's adoption of the 15-day requirement.

## IV

We have considered Archroma's remaining arguments and find them unpersuasive. Section 315.218(d)(1)(i)'s 15-day requirement for domestic interested parties to submit their notice of intent to participate in a sunset review of an antidumping duty order is an exercise of Commerce's "fill up the details" rulemaking authority and the product of the agency's reasoned decisionmaking. The Trade Court's judgment to the contrary, and order enjoining enforcement of the 15-day requirement, is reversed. This case is remanded for the Trade Court to enter judgment for Commerce, the Commission, and TFM.

## REVERSED AND REMANDED

### COSTS

Each party to bear its own costs.